UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICKY LEE SWEET,
Plaintiff

vs

Case No. 1:09-cv-106
(Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## REPORT AND RECOMMENDATIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Disability Insurance Benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6) and the Commissioner's Memorandum in Opposition. (Doc. 10).

## PROCEDURAL HISTORY

Plaintiff was born on April 5, 1954 and was 54 old at the time of the administrative law judge's (ALJ) decision. Plaintiff has a high school education and past work experience as a lead carpenter, cabinet maker, cabinet estimator, and supervisor carpenter. Plaintiff filed an application for DIB in August 2005, alleging an onset of disability of March 2, 2004, due to a back injury, herniated disc at L4 and L5, depression, and degenerative disc disease. Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a *de novo* hearing before an ALJ. (Tr. 33-42). Plaintiff, who was represented by counsel, appeared and testified at two hearings before ALJ Deborah Smith. A vocational expert (VE) and medical expert (ME) appeared and testified at both hearings.

On September 23, 2008, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff suffers from the severe impairments of back problems with

history of surgery for disc herniation in May 1996, obesity (6' 2" - 270 pounds), diabetes, neuropathy, knee problems, and depression, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 18-20). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a range of sedentary to light work. Specifically, he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; and sit/stand is optional. Plaintiff can occasionally bend, stoop, and crouch, but cannot balance, kneel, crawl, work at unprotected heights, around dangerous machinery, ladders, ropes, scaffolds, slippery surfaces, concentrated vibration, and no foot pedals. Plaintiff is capable of performing simple to moderately complex tasks in a low stress, routine and predictable work environment that does not require strict production quotas and requires only superficial interactions with others. (Tr. 23). The ALJ also determined that plaintiff's allegations regarding his limitations are not totally credible. (Tr. 28). The ALJ next determined that plaintiff is unable to perform his past relevant, but based on the vocational expert's testimony, could perform other jobs that exist in significant numbers in the national economy such as packager, cashier, bench assembler, and inspector. (Tr. 31). Consequently, the ALJ concluded that plaintiff is not disabled under the Act. *Id.* The Appeals Council denied plaintiff's request for review (Tr. 6-8), making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

2

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment,

respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and

4

background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, (citing *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544; 20 C.F.R. § 404.1527(d)(2)).

The ALJ must give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra*. On the other hand, the ALJ errs by giving an opinion controlling weight, simply because it is the opinion of a treating source, if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or if it is inconsistent with the other substantial evidence in the case record. *Blakley, supra*; Soc. Sec. Rul. 96-2p. If the ALJ does not accord controlling weight to a treating physician's opinion, the ALJ must nevertheless determine how much weight should be accorded to the opinion by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra*.

5

In determining what weight should be accorded to the opinion of a treating source, the ALJ must clearly set forth the reasons for the weight given a particular the opinion. *Blakley,* 581 F.3d at 406; 20 C.F.R. §404.1527(d)(2). The ALJ's reasoning must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Blakley,* 581 F.3d at 406-07. The Sixth Circuit has explained the two-fold purpose behind this procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407. Because this requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's failure to follow the procedural requirements for weighing opinions *"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Blakley, supra,* (quoting, *Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original)).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. § 404.1520a. A standard document, called the Psychiatric Review Technique Form, must be

completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). Plaintiffs level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3); *see Hogg v. Sullivan,* 987 F.2d 328,332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 404.1520a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. § 404.1520(c) - (f).

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F. Supp. 686 (S.D. Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the

7

parties in their briefs (Doc. 6 at 3-5, 7, 9; Doc. 10 at 2-9) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case. First, plaintiff argues the ALJ failed to give controlling weight to the opinion of his treating physicians in violation of Social Security Ruling 96-2p. Next, plaintiff contends the ALJ relied too heavily on the testimony of a nonexamining source, Dr. Arthur Lorber, whose medical opinions were contrary to overwhelming evidence of numerous treating and non-treating physicians. Finally, plaintiff contends the ALJ ignored the fact that his various impairments, when combined, warrant a disability finding.

Plaintiff's first two assignments of error concern the proper weight to be accorded the medical opinions of the various treating and non-treating medical sources contained in the record, including plaintiff's primary care physicians, consultative examiners, agency reviewers, and the ME who testified at the hearings. Plaintiff argues that the opinions of his treating doctors should be accorded great weight and that based on these opinions, he meets the Listings and is therefore disabled. The Commissioner counters that plaintiff's impairments do not meet or equal the Listings and that his RFC permits him to perform a range of sedentary to light work.

More specifically, plaintiff contends the ALJ should have accorded controlling weight to the RFC opinion of his primary care physician, Dr. Angel, who opined in March 2008, that plaintiff could occasionally lift/carry ten pounds and five to ten pounds frequently; stand/walk two hours total with interruptions during an eight-hour work day; and sit two hours total during an eight-hour work day. (Tr. 479-84). Dr. Angel further opined that plaintiff could occasionally balance and kneel, but never stoop, crouch, climb, crawl, or work around vibrations. *Id.* In August 2008, Dr. Angel stated Plaintiff met or equaled Listings 11.14, 1.02A, and 1.04A. (Tr. 601, 604-06). Plaintiff also relies on the opinion of clinical psychologist, Dr. Wander, who opined in April 2008, that plaintiff's symptoms would interfere with his ability to work, get along with co-workers, and manage work stress. (Tr. 551). Dr. Wander also found plaintiff's depression interfered with his ability to function. (Tr. 566). Plaintiff also relies on the opinion of consulting psychologist, Dr. Oleski, who opined in July 2008, that plaintiff had a moderate to severe level of depression and persistent pain that was significant enough to interfere with his activities of daily living. (Tr. 627-30). Dr. Oleski further reported that plaintiff had a poor

8

ability to make occupational adjustments, make performance adjustments, and make personal-social adjustments. (Tr. 631-33). Plaintiff contends that the ALJ erred by failing to give controlling weight or complete deference to these treating doctors' opinions. Plaintiff argues that their opinions are supported by objective medical data and testing and that they have rendered these opinions in the course of long-standing treating relationships with plaintiff.

The ALJ acknowledged that Dr. Angel's RFC assessment does not allow for full time work. The ALJ declined to give Dr. Angel's RFC findings controlling weight because she concluded that Dr. Angel's RFC findings were not supported by the objective findings in the record, and that they are contradicted by other substantial evidence in the record, including the opinion of Dr. Lorber, the ME. (Tr. 28-29).

The ALJ discussed Dr. Angel's opinion as follow:

Dr. Angel's treatment notes do not give much information other than giving diagnoses and his conclusory statements about what the claimant can and cannot do. For instance, findings from other doctors as discussed above clearly do not show the claimant has the neurological deficits to meet Section 1.04(A). Specifically, it was noted that he had normal neurological findings that can be found in Exhibits 1F, 2F, 10F, 17F, 23F, and 26F. Also, Dr. Angel's treatment notes in Exhibit 16F are silent regarding findings necessary to meet Section 1.04(A) and there are no findings to show he meets Section 1.04(B). His treatment notes also do not show that the claimant has an inability to effectively ambulate or that he has the disorganization of motor function in two extremities. In fact, Dr. Angel noted that claimant's pain level was at a three to four with medications and he also described the claimant's function, physical, psychological, household function, daily activities, and quality of social life was "good" on several occasions (Exhibit 16F/17, 20, 22). It appears that Dr. Angel merely cited the criteria called for by the Listings without giving supporting evidence or citation to evidence to support his conclusion. Therefore, the undersigned finds that his conclusion is not supported by other evidence of record or by the medical expert's testimony and gives his opinion little weight.

*Id.*

The ALJ's decision in this regard is supported by substantial evidence. As noted above, to be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent

9

with other substantial evidence in the record. *See Walters,* 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2). In weighing the opinions of the treating physicians, the ALJ considered factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404. 1527(d)(2)-(6); *Wilson,* 378 F.3d at 544.

Plaintiff argues that Dr. Angel's opinion was supported by the opinion of Dr. Shapiro, a physical medicine and rehabilitation specialist. Dr. Shapiro opined that plaintiff was disabled and incapable of performing any type of competitive employment. (Tr. 584-88). On April 29, 2008, Dr. Shapiro completed a functional capacities evaluation wherein he reported the plaintiff could lift/carry 11 to 20 pounds occasionally and carry five pounds frequently, sit for two hours total during an eight-hour workday, stand less than 30 minutes total during an eight-hour workday, and he could not walk without pain. (Tr. 589). In a second RFC assessment completed that same date, Dr. Shapiro opined that the plaintiff could lift/carry 20 pounds occasionally but nothing frequently and that he was not capable of standing/walking or sitting for any amount of time. (Tr. 590-96).

Dr. Lorber, the ME noted that Dr. Shapiro reported that the plaintiff had evidence of polyneuropathy. Dr. Lorber testified that this diagnosis is contradicted by the records from plaintiff's examinations with Dr. Fudala (Tr. 210-11); Dr. Bohinski (Tr. 217); Dr. Linquist (Tr. 224-25) and Dr. Swank (Tr. 377-407) which do not include evidence of any focal neurological deficits. Furthermore, Dr. Lorber testified that there was no indication that the plaintiff was a surgical candidate because his neurological examinations were within normal limits and the evaluating surgeons indicated that surgery might stabilize his spine but could not be guaranteed to provide any pain relief.. *See* Tr. 690. The ALJ properly evaluated all the medical evidence and did not err by relying, in part, on the testimony of the ME and the ME's review of the medical record in concluding that plaintiff does not meet or equal the Listings and in formulating her RFC findings.

Similarly, the ALJ gave "little weight" to plaintiff's treating mental health providers, Dr. Wander and Dr. Oleski, whose opinions conflicted with those of other examining and non-

examining sources concerning the claimant's condition and ability to function from a psychiatric standpoint.. The ALJ found that plaintiff's description of his daily activities suggests that he has a preserved interest/activity level, an ability to concentrate and has social support system that is contrary to the findings of Dr. Wander and Dr. Oleski. *Id.* Dr. Wander's opinion was based on a treating relationship but did not include reference to any substantiating medical data or other objective evidence. *Cf., Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994). The ALJ found that Dr. Wander's opinion, and that of Dr. Oleski who assessed plaintiff's RFC after a consultative mental health examination, were contradicted by the opinions of other examining sources who likewise assessed plaintiff's mental health functioning after consultative examinations. The ALJ's findings on plaintiff's mental RFC which evaluated all the medical records are supported by substantial evidence.

In determining plaintiff's RFC, the ALJ relied on the testimony of Dr. Lorber, the ME who testified at both hearings. Dr. Lorber testified that plaintiff's impairments did not meet or equal Listings 1.04A, regarding lumbar conditions, 1.00(B)(2)(B), 1.02A, regarding knee conditions or 11.14, regarding diabetic peripheral neuropathy. (Tr. 683-85, 711-13). Dr. Lorber testified that the plaintiff is ambulatory and does not use a cane and it does not appear that one has been prescribed. *Id.* Dr. Lorber further testified that plaintiff does not meet or equal Section 11.14 due to no motor disorganization. *Id.* Dr. Lorber also testified that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk 4 hours a day and sit 6 hours a day with a sit stand option; avoid balancing, kneeling, crawling, working at unprotected heights and around dangerous machinery, ladders, ropes and scaffolds, slippery surfaces, concentrated vibration, and foot pedals; and occasionally stoop and crouch. (Tr. 713-14).

Plaintiff contends that Dr. Lorber's opinions "were contrary to overwhelming evidence of numerous treating and nontreating physicians." *See* Doc. 6 at 6. Plaintiff continues, "Dr. Lorber's opinions were contrary to the expert medical opinions of treating sources such as Dr. Angel, Dr. Shapiro, Dr. Minhas, and Dr. Skurow. Dr. Lorber's testimony was also divergent from the medical opinions of nontreating sources including Dr. Wachendorf and Dr. Moncman." *Id.*

The ALJ's decision to give Dr. Lorber's testimony great weight is substantially supported by the record, including the examination findings of Dr. Fudala, Dr. Bohinski, Dr. Linquist, Dr. Swank and Dr. Wachendorf.

A review of the ALJ's decision reveals that she considered the record as a whole and she reasonably concluded that Plaintiff could perform a range of sedentary to light work. (Tr. 23). In doing so, the ALJ properly considered the medical source opinions, the objective medical evidence, and other pertinent evidence. *See* 20 C.F.R. §404.1545. The ALJ's reliance on Dr. Lorber's opinion was warranted because he was the only medical source who reviewed the entire record and who also considered Plaintiff's testimony during the administrative hearings. (Tr. 20). The ALJ, therefore, properly gave Dr. Lorber's opinion significant weight. *See* 20 C.F.R. §404.1527(d)(3) ("We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").

In addition to the medical source opinions, the ALJ cited Plaintiff's level of activity in finding his descriptions of his impairments to be less than fully credible. *See* Tr. 28-29; *see also* 20 C.F.R. § 404.1529(c)(3)(I) (daily activities considered in evaluating symptoms). Indeed, the ALJ noted that plaintiff reported watching television, talking on the telephone, reading the mail, working on his computer, and driving to Washington D.C. to attend a reunion. He also reported reading the newspaper, visiting with his neighbor and in-laws regularly, and playing guitar with his friends. (Tr. 255, 546, 571, 652). The record also showed that plaintiff went boating, fished, did yard work, fixed the tile in his bathroom and light repairs. (Tr. 539, 557, 628).

Based on the record as a whole, the ALJ reasonably concluded that Plaintiff could perform a range of sedentary to light work. Accordingly, although Plaintiff's Statement of Errors suggests that the evidence should have been weighed differently, his assertions do not undermine the substantial evidence supporting the ALJ's assessment of the medical source opinions and his other findings. Consequently, the ALJ's decision must be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Mullen v. Bowen*, 800 F.3d 535, 545 (6th Cir. 1986).

Finally, plaintiff contends the ALJ erred by failing to consider the combination of diabetes, intractable pain, depression, degenerative joint disease of the cervical and lumbar

12

spine, internal derangement of the left knee, hypertension, insomnia, osteoarthritis of the right hand and both knees and carpal tunnel syndrome. Plaintiff cites to the diagnoses from Dr. Angel, Dr. Shapiro and from a psychological point of view, Dr. Wander. Plaintiff argues that his various physical and mental maladies can be combined to equal any number of the Impairment Listings.

While it is clear the ALJ must consider the combined effect of plaintiff's impairments in assessing his eligibility for disability benefits, *See Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case. *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990)(per curiam); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)(per curiam), *cert. denied*, 484 U.S. 1075 (1988). The ALJ found plaintiff suffered from multiple impairments and analyzed each of plaintiff's impairments after carefully considering the entire record. (Tr. 18-20). The ALJ's finding that plaintiff's combination of impairments (plural) did not meet or equal the Listings is sufficient to show that the ALJ had considered the effect of the combination of impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592.

The RFC found by the ALJ took into account both exertional and non-exertional limitations caused by plaintiff's various severe impairments, and the hypothetical posed to the VE, upon whose testimony the ALJ relied, included all the various limitations found to result from the combination of plaintiff's severe impairments. The ALJ was not required to base her RFC on alleged limitations from impairments which were determined to be non-severe.

13

## CONCLUSION

Because substantial evidence supports the decision of the ALJ, the Court recommends that the ALJ's decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: 2/26/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).